# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| Kara Teggerdine, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>v.<br><br>Speedway LLC,<br><br>           Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Kara Teggerdine, by and through the undersigned counsel, brings this Class Action Complaint against Speedway LLC, on behalf of herself and all others similarly situated, and allege, upon personal knowledge as to her own actions, upon their counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     Plaintiffs bring this class action against Speedway International LLC (referred to herein as "Speedway" or "Defendant") for its unauthorized charging of customers using a debit/check card at point-of-sale gasoline pumps an additional $125 authorization hold regardless of the transaction purchase price and for failing to provide any notice to Plaintiff and other Class members that the additional sum beyond the state purchase price would be taken from their personal financial accounts and held for an extended period of time.

2.     As a result of Speedway's negligence and other violations of law, Plaintiff and Class members were denied access to their personal monies, causing Plaintiff and Class members to be unable to meet the basic necessities of life, such as food and shelter.  Being denied access

1

to their funds also caused financial damages to Plaintiff and Class members in the way of insufficient funds charges and late fees. During the period in which Plaintiff and Class members were denied access to their funds, Speedway converted these monies for its own use.

3. Plaintiff seeks damages and injunctive relief based upon the unlawful conduct of Speedway in imposing this additional $125 authorization charge without notification or warning, for denying Plaintiff and Class members the ability to use their personal monies that rightfully belonged to them and in misappropriating the personal monies of Plaintiff and Class members.

## PARTIES

4. Plaintiff Kara Teggerdine is a resident of the state of Florida.

5. Defendant Speedway LLC is a Delaware limited liability company, maintains its headquarters in Enon, Ohio and is authorized to and conducts business in this state.

6. Speedway LLC is the nation's largest chain of company-owned and operated retail gasoline convenience stores. Speedway has approximately 2,770 locations in 22 states, from Florida to Wisconsin.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed $5,000,000, exclusive of interest and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendants on the other, are citizens of different states.

8. This Court has jurisdiction over Speedway as it operates retail gasoline convenience stores serving the public, and it is at one of the stores in this District that Plaintiff made a purchase using her debit card which led to the damages that she suffered. Speedway also

advertises in a variety of media throughout the eastern-third of the United States, including Florida and this District. Through its business operations in this District, Speedway intentionally avails itself of the markets within this District to render the exercise of jurisdiction by this Court just and proper.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, Speedway operates retail gasoline convenience stores within this District, and Speedway has caused harm to Class members residing in this District.

**FACTUAL BACKGROUND**

10. On or about November 17, 2016, Plaintiff Kara Teggerdine visited a Speedway gasoline station with the intent to purchase gasoline based on the posted and advertised price of gasoline on outdoor signs located at the premises.

11. The gas pumps at this station are equipped with self-service, point-of-sale, card reading systems so that patrons may use a debit/check card or credit card at the pump without entering the store.

12. Plaintiff Teggerdine purchased and pumped what the display screen indicated to be $5.01 worth of gas using her check card.

13. Upon completion of her $5.01 purchase and pursuant to Speedway's purchase instructions, Plaintiff reasonably expected that Speedway would immediately cause to be withdrawn from her bank account the sum of $5.01. As she and her family had been loyal Speedway customers for years, she also expected that Speedway would place an additional $1.00 hold on the bank account until the transaction cleared.

14. Later that same day, Plaintiff Teggerdine went to make another purchase and her card was declined for insufficient funds. Upon checking on the account transactions, she learned that there had been a charge to her bank card that wiped out the $59.70 in her bank account, leaving her with a zero balance.

15. Suspecting that her bank card had been breached or hacked, Plaintiff Teggerdine went to her bank for assistance. The bank representative reviewed the transactions on Plaintiff's account and determined that the charge had been made by Speedway.

16. Plaintiff Teggerdine then called the Speedway store where she had purchased her gas to ask if Speedway had made the charge as a hold or if other customers had reported having fraudulent charges made to their cards used to purchase gas. The Speedway manager responded that the charge was not part of any Speedway policy and denied that the charge was made by Speedway. The manager gave Plaintiff a toll-free number to call the corporate office of Speedway for further assistance.

17. Plainitff Teggerdine called the corporate office of Speedway and learned that Speedway had implemented a new policy effective, Wednesday, November 16, to place holds of $125 on the bank accounts of customers making gas purchases. The Speedway representative told Plaintiff that the hold on the account would be released within 2 hours, but this did not occur. The charge on Plaintiff's bank account was not reversed for approximately 48 hours.

18. The $125 charge made by Speedway completely wiped out all the money in Plaintiff's bank account. Because Plaintiff did not have access to the money she had in her bank account, she did not have enough money on hand to make her rent payment.

19. By November 18, 2016, Speedway made postings to its Facebook page stating that the $125 authorization holds, and the ensuing problems and damages, were the result of a

new credit card program implemented by Speedway on Wednesday, November 16 and terminated by the afternoon of Thursday, November 17, 2016 because of the problems troubles experienced by customers: [1]



20. With the implementation of the Real Time Clearing program, Speedway changed its authorization hold policy and increased authorization holds for debit/check card transactions from $1.00 to $125.00.

21. Speedway made this change in its policy without disclosure or notification to its customers, and seemingly without notice to even many of its own personnel.

22. Real Time Clearing is a program which is intended to allow debit/check card transactions to be processed immediately, thereby reducing any authorization hold times that the merchants place on customers' financial accounts for pre-authorization.[2]

23. As the posting by Speedway above indicates, the Real Time Clearing program did not function properly and the holds on customers' accounts were not released immediately or

---

[1] *See*, https://www.facebook.com/SpeedwayStores/posts_to_page/ (last visited November 23, 2016).

[2] *See*, http://investor.visa.com/news/news-details/2008/Visa-to-Help-Ease-Pain-at-the-Pump/default.aspx (last visited November 23, 2016).

within two hours, but instead for many customers lasted for at least three days. Customers took to social media to voice their concerns:[3]



24.     Unfortunately, the termination of the Real Time Clearing program by Speedway did not occur before Plaintiff and Class members were denied access to their personal funds, causing financial hardship and other damages.

---

[3] *See*, https://www.facebook.com/SpeedwayStores/posts_to_page/ (last visited November 23, 2016).

## CLASS ACTION ALLEGATIONS

25.     Plaintiff seeks relief in her individual capacity and as representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2), (b)(3) and (c)(4), Plaintiffs seek certification of a Nationwide class defined as follows:

> All persons residing in the United States who made a gasoline purchase with a debit/check card at a Speedway station from November 16, 2016 through and including November 17, 2016, and had a $125 authorization hold placed on their personal financial account (the "Nationwide Class").

26.     Excluded from each of the above Classes are Speedway, including any entity in which Speedway has a controlling interest, is a parent or subsidiary, or which is controlled by Speedway, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Speedway. Further excluded are the judges and court personnel in this case and any members of their immediate families.

27.     **Numerosity. Fed. R. Civ. P. 23(a)(1).** The members of the Class are so numerous that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, it is estimated that Speedway serves approximately 3.7 million customers per day.[4]

28.     **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).** There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members, and resolution of these common issues will resolve them for the entire Class. These common questions of law and fact include, without limitation:

---

[4] *See*, http://www.cspdailynews.com/industry-news-analysis/top-convenience-stores/retailer/speedway-llc-marathon-petroleum-corp-2016 (last visited November 23, 2016).

    a.    Whether Speedway had a duty to inform its customers, including Plaintiff and the proposed Class, that it requires an authorization hold of $125 being place on customers' financial accounts when they use a debit/check card at a self-pay gasoline pump;

    b.    Whether Speedway was negligent in failing to inform its customers, including Plaintiff and the proposed Class, that it requires an authorization hold of $125 being place on customers' financial accounts when they use a debit/check card at a self-pay gasoline pump;

    c.    Whether Speedway's conduct was unfair or unlawful;

    d.    Whether Speedway breached its contracts with Plaintiff and the propose Class;

    e.    Whether Plaintiffs and the Class have sustained damages as a result of Speedway's conduct alleged herein and, if so, what is the proper measure of such damages;

    f.    Whether Plaintiffs and the Class are entitled to restitution and, if so, what is the proper measure of restitution; and,

29.   **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of those of the Class because, *inter alia*, all members of the Class were injured through the common misconduct described above and were subject to Defendants' unfair and unlawful conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

30.   **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately represent and protect the interests of the Class in that she has no disabling conflicts of interest that would be antagonistic to those of the Class. Plaintiff seeks no relief that is adverse to the members of the Class and the infringement of the rights and the damages she has suffered are typical of other Class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

31. **Superiority of Class Action. Fed. R. Civ. P. 23(b)(3).** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.

32. Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Speedway violations of law inflicting substantial damages in the aggregate would go un-remedied.

33. The conduct of Speedway as to all members of the Class has been identical.

## COUNT I
### Negligence
(Asserted on Behalf of Plaintiff and the Class)

34. Plaintiffs restate and reallege Paragraphs 1 through 32 as if fully set forth herein.

35. The law imposes an affirmative duty on Speedway to sell gasoline at the advertised price.

36. Speedway had a duty to disclose to its customers, including Plaintiff and the Class, any policies that would cause an amount different from the purchase price of a transaction to be withdrawn from their financial accounts.

37. By accepting debit/check cards, Speedway had a duty to Plaintiffs and the Class, as paying customers, to use reasonable care to ensure that only the advertised and agreed upon purchase price of a transaction would be withdrawn from their financial accounts.

38. Speedway failed to use reasonable care in communicating the change in policy regarding the authorization hold.

39. By charging an additional $125 to each purchase, Speedway breached its duty to sell gasoline at the advertised price.

40. Speedway breached its duties to Plaintiff and the Class by charging the $125 authorization hold to customer accounts or, alternatively, by not reversing the authorization hold within a timely manner.

41. Speedway failed to use reasonable care to ensure that only the purchase price of a transaction was withdrawn from the financial accounts of Plaintiff and the Class.

42. Speedway knew, or reasonably should have known, that breaching these duties would harm Plaintiff and Class members. It was reasonably foreseeable to Speedway that charging customers an additional $125 for purchases and not reversing the hold for an extended period of time would deprive customers of access to the monies in their financial accounts causing hardship and injury.

43. Speedway should have anticipated potential problems, been adequately prepared to resolve them quickly, and properly advised Plaintiff and the Class of the possibility of a prolonged authorization hold of $125 on their financial accounts.

44. Further, through its failure to provide timely and clear notification of the change in policy to consumers, Speedway prevented Plaintiff and Class Members from taking meaningful, proactive steps to ensure that they did not lose access to the monies in their financial accounts.

45. Speedway's negligence was a substantial factor in causing harm to Plaintiff and Class members. But for Speedway's charging the $125 authorization hold without permission or notice to Plaintiff and Class members, Plaintiff and Class members would not have been denied access to their monies and would not have suffered harm. As a direct and proximate result of Speedway's negligence, Plaintiffs and the proposed Class were damaged in an amount to be proven at trial.

**Count II**
**Breach of Implied Contract**
(Asserted on Behalf of Plaintiff and the Class)

46. Plaintiffs restate and reallege Paragraphs 1 through 32 as if fully set forth herein.

47. Speedway solicited and invited Plaintiffs and Class members to purchase gasoline using their debit/check cards at the self-service gasoline pumps. Plaintiff and Class members accepted Speedway's offers and used their debit/check cards to make gasoline purchases at Speedway.

48. With each purchase, Plaintiff and Class members entered into an implied contract with Speedway to purchase gasoline based on the advertised price per gallon.

49. It was not bargained for and Speedway did not inform Plaintiff and Class members that they had an additional obligation or would incur an additional expense of $125 in relation to the transaction.

50. With each use of the debit/check card by Plaintiff and the Class, Speedway, without customers' knowledge or permission, sought a form of added protection in regards to the pending transaction by requiring through its point-of-sale machine an additional $125 authorization charge.

51. Speedway breached the implied contract with Plaintiff and the Class by secretly requiring the excessive authorization charge in the amount of $125 which prevented Plaintiff and the Class from use of said funds for an extended period of time.

52. Plaintiff and Class members fully performed their obligations under the implied contracts with Speedway.

53. As a direct and proximate result of Speedway's breaches of its implied contracts with Plaintiff and Class members, Plaintiff and Class members sustained actual losses and damages as described in detail above.

## COUNT III
### Unjust Enrichment
(Asserted on Behalf of Plaintiff and the Class)

54. Plaintiffs restate and reallege Paragraphs 1 through 32 as if fully set forth herein.

55. Plaintiff and the proposed Class have conferred a monetary benefit upon Speedway by entering a contract with Speedway for the purchase of gasoline at a specified and advertised price.

56. By the unfair, misleading and inequitable conduct alleged herein, Speedway has unjustly received and retained benefits at the expense of Plaintiff and the proposed Class, particularly the additional $125 charged for each point-of-sale transaction.

57. Speedway wrongfully charged an additional $125 to Plaintiff and Class members and deprived them of the use of $125 of their personal funds by causing an authorization hold to be placed on their financial accounts.

58. During the time Plaintiff and the proposed Class did not have access to the funds held by Speedway, Speedway accrued interest on the monies collected from Plaintiff and Class members through the authorization hold.

59. Under principles of equity and fairness, Speedway should not be permitted to retain money belonging to Plaintiffs and the proposed Class that Speedway unjustly received as result of their unfair, misleading and inequitable conduct alleged herein without providing compensation to Plaintiff and the proposed Class.

60. Plaintiff and the proposed Class have suffered pecuniary harm as a direct and proximate result of the Speedway's inequitable conduct.

61. Plaintiff and Class members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits and other compensation obtained

by the Speedway, and for such other relief that this Court deems proper, as a result of their unfair, misleading and inequitable conduct.

## COUNT IV
### Violation of Florida Unfair and Deceptive Trade Practice Act
### Fla. Stat. § 501.201, *et seq*.
(Asserted on Behalf of Plaintiff and the Class)

62. Plaintiffs restate and reallege Paragraphs 1 through 32 as if fully set forth herein.

63. The purpose of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*., ("FDUTPA") is to "protect the consuming public…from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practice in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

64. Plaintiff is a "consumer" as defined by Florida Statute § 501.203(7), and the subject transaction is "trade or commerce" as defined by Florida Statute § 501.203(8).

65. FDUPTA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce, and in unfair methods of competition.

66. For the reasons discussed herein, Speedway violated FDUPTA by engaging in the unconscionable, deceptive, unfair acts or practices described herein and proscribed by Florida Statute § 501.201, *et seq*. Speedway's unconscionable, deceptive, and unfair acts and practices described herein were likely to, and did in fact, deceive members of the public, including consumers (like Plaintiff) acting reasonably under the circumstances and to their detriment.

67. In committing the acts alleged above, Defendants engaged in unconscionable, deceptive, and unfair acts and practices acts by charging an additional $125 authorization hold

on each debit/check card without any disclosure to its customers are unconscionable acts or practices, and/or unfair or deceptive acts or practices in the conduct of commerce in violation of FDUPTA.

68. Speedway's actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged herein, Speedway advertised, marketed, and sold its gasoline at one price but charged customers using their debit/check cards an additional $125 authorization charge without notification to customers, thereby offending an established public policy, and engaging in immoral, unethical, oppressive, and unscrupulous activities that are and were substantially injurious to consumers.

69. In committing the acts alleged above, Speedway engaged in unconscionable, deceptive, and unfair acts and practices acts by omitting, failing to disclose, or inadequately disclosing its policy for authorization holds.

70. Speedway's conduct is deceptive and unfair, as it is likely to, and did, mislead consumers acting reasonably under the circumstances.

71. As a direct and proximate result of Speedway's conduct, Plaintiffs and other members of the Class have been harmed, in that they were wrongfully deprived from use of their personal funds, which resulted in profound vulnerability and inability to use their money for personal needs and resulted in financial damages in the form of overdraft fees and loss of use of funds,

72. Plaintiff reserves the right to allege other violations of FDUPTA as discovery unfolds and as Defendants' conduct is ongoing.

73. As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices alleged herein, Plaintiff has been damaged and is entitled to recover actual damages,

to the extent permitted by law, including § 501.211, Florida Statutes (2009), in an amount to be proven at trial. In addition, pursuant to § 501.211, Florida Statutes (2009), Plaintiff seeks equitable relief and to enjoin Defendants on terms the Court considers reasonable. Plaintiff also seeks reasonable attorneys' fees and costs, as well as statutory damages as prescribed by §§ 501.211(2) and 501.2075, Florida Statutes (2009).

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all Class members proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against Speedway as follows:

a. For an Order certifying the proposed Class, the Statewide Classes, and appointing Plaintiff and her Counsel to represent the Class;

b. For an Order that Speedway is permanently enjoined from its improper conduct and practices as alleged;

c. A judgment awarding Plaintiff and Class members restitution, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Speedway obtained as a result of its unlawful, unfair, and fraudulent business practices and conduct;

d. For an award of actual damages and compensatory damages, in an amount to be determined;

e. For an award of costs of suit and attorneys' fees, as allowable by law; and,

f. Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated: November 28, 2016

Respectfully submitted,

/s/ John A. Yanchunis
JOHN A. YANCHUNIS
Florida Bar No. 324681
jyanchunis@ForThePeople.com
MARCIO W. VALLADARES
Florida Bar No. 986917
mvalladares@ForThePeople.com

PATRICK A. BARTHLE II
Florida Bar No. 99286
pbarthle@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

JEAN SUTTON MARTIN *
LAW OFFICE OF JEAN SUTTON
MARTIN PLLC
2018 Eastwood Road Suite 225
Wilmington, NC 28403
Telephone: (910) 292-6676
Facsimile: (888) 316-3489
Email: jean@jsmlawoffice.com

*Pro Hac Application to be submitted