UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KARA TEGGERDINE, individually and on
behalf of all others similarly situated,

    Plaintiff,

v.    Case No: 8:16-cv-03280-T-27TGW

SPEEDWAY LLC and WORLDPAY US INC.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Defendants' Motion for Summary Judgment (Dkt. 72) and Plaintiff's response (Dkt. 79). This action arose from Defendants' implementation of a debit/credit card program, the Real Time Clearing program, at Speedway's retail gasoline convenience stores on November 16 and 17, 2016, and the preauthorization requests and subsequent holds placed on customers' accounts who purchased gasoline at the pump. Worldpay processed the purchases.

The Real Time Clearing program, as it was intended to operate, would increase Speedway's preauthorization request from $1.00 to $125.00, providing additional protection to Speedway and allowing customers to purchase more fuel at the pump. Simultaneously, Worldpay would flag the transactions as Real Time Clearing transactions, which would decrease the hold time for customers' funds from several days to a maximum of two hours. However, the undisputed facts demonstrate that the Real Time Clearing program did not operate as intended.

Plaintiff brings claims for negligence, breach of implied contract, unjust enrichment, and violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* Plaintiff's claim for injunctive relief was dismissed without prejudice. (Dkt 77). She was given leave

to file a second amended complaint and elected not do so. (Dkt. 78). Defendants move for summary judgment on the remainder of Plaintiff's claims. Upon consideration, Defendants' motion is GRANTED in part and DENIED in part.

## I. MATERIAL UNDISPUTED FACTS

On November 17, 2016, Plaintiff purchased $5.01 of gasoline at the pump with her Visa debit card at a Speedway store in St. Petersburg, Florida. (Kara Teggerdine Dep. 32:4-20, Aug. 5, 2017, Dkt. 87-1). Prior to her purchase, she had approximately $60.00 in her checking account. (Teggerdine Dep. 32:17-18, Dkt. 87-1). Even though she had not made any other purchases, when she checked her account balance the following morning she discovered that her balance was zero. (Teggerdine Dep. 35:9-17, Dkt. 87-1). She called and visited a branch of her financial institution, Wells Fargo, to determine why she had a zero balance in her account. (Teggerdine Dep. 93-95, Dkt. 87-1). Wells Fargo was unable to assist her and suggested that she contact Speedway because it appeared that Speedway charged her account in excess of the $5.01 gasoline purchase. (Teggerdine Dep. 96:2-7, Dkt. 87-1). Later that day, Plaintiff contacted the manager at the local Speedway where she made her purchase. The manager did not find any transactions other than her $5.01 gasoline purchase. (Teggerdine Dep. 96:12-16, Dkt. 87-1). Plaintiff then contacted Speedway customer service and learned that a $125.00 hold was placed on accounts used to purchase gasoline at the pump and that those funds would be available within twenty-four to forty-eight hours. (Teggerdine Dep. 101:8-15, Dkt. 87-1). Approximately forty-eight hours after her initial gasoline purchase of $5.01, the funds on which the hold had been placed were made available. (Teggerdine Dep. 108:22-109:5, Dkt. 87-1).

2

## II. STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party fails to demonstrate the absence of a genuine dispute, the motion should be denied. *Kernel Records*, 694 F.3d at 1300 (citation omitted). On the other hand, "'[i]f no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted.'" *Lima v. Fla. Dep't of Children & Families*, 627 F. App'x 782, 785–86 (11th Cir. 2015) (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994)).

## III. DISCUSSION

### A. Monetary Damages

Defendants move for summary judgment on Plaintiff's request for damages, contending that she did not suffer a financial injury to give rise to standing, since she did not incur overdraft charges or late fees. Defendants fail to cite authority in support of their position, however. Indeed, in this

Circuit, a plaintiff suffers injury where she has "lost time." *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017) (finding concrete injury when a plaintiff "'lost time . . . attempting to resolve the credit inaccuracies'" (omission in original, citation omitted)). And, it is undisputed that Plaintiff spent time and effort attempting to determine why her account balance was zero.[1] (Teggerdine Dep. 93-96, Dkt. 87-1). Defendants' motion for summary judgment as to standing will therefore be denied.

### B. Count I - Negligence - Speedway and Worldpay

Defendants move for summary judgment on Plaintiff's negligence claim, contending that they did not owe a duty of care to Plaintiff and their conduct does not constitute actionable negligence. In other words, Defendants contend that they did not breach a duty owed to Plaintiff. Plaintiff contends that Defendants assumed a duty to act reasonably by implementing the Real Time Clearing program and breached their duty by setting the preauthorization request at $125.00, failing to provide notice of the $125.00 preauthorization request, and failing to act with reasonable care with regard to implementing the Real Time Clearing program.

To prevail on her claim for negligence, Plaintiff must prove that Defendants owed a duty of care, breached that duty, caused the harm she suffered, and that she suffered damages. *Schwartz v. Wal-Mart Stores, Inc.*, 155 So. 3d 471, 473 (Fla. 5th DCA 2015). "The existence of a duty of care is generally a question of law to be determined by the court, while breach, causation, and damages are generally questions to be decided by the trier of fact." *Id.* (citing *Jackson Hewitt, Inc. v. Kaman*,

---

[1] Worldpay implicitly acknowledged the injury suffered by Plaintiff. *See* (Winters Email, Nov. 21, 2016, Dkt. 87-6 at 1) ("The summary is that this is the pain that SSA/Cardholders felt that day with larger auth holds and later settlement/release of those auth holds."); (Forbes Email, Nov. 20, 2016, Dkt. 87-6 at 3) ("I think we especially need to know Debit (not just Pin) as this is where the real damage is.").

4

100 So.3d 19, 28 (Fla. 2d DCA 2011)).

Florida recognizes that a duty of care may arise from four sources: (1) regulations or statutes; (2) judicial interpretations of such legislation; (3) other judicial authority; and (4) specific factual scenarios. *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227–28 (Fla. 2010). As the Florida Supreme Court explained:

> The statute books and case law ... are not required to catalog and expressly proscribe every conceivable risk in order for it to give rise to a duty of care. Rather, each defendant who creates a risk is required to exercise prudent foresight whenever others may be injured as a result. This requirement of reasonable, general foresight is the core of the duty element

*Id.* (alteration in original) (quoting *McCain v. Fla. Power Corp.*, 593 So.2d 500, 503 (Fla.1992)). Indeed, when a defendant takes an action for the benefit of another, even gratuitously, it must do so with reasonable care. *Union Park Mem'l Chapel v. Hutt*, 670 So. 2d 64, 66–67 (Fla. 1996) ("It is clearly established that one who undertakes to act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care.").

It is undisputed that Defendants implemented the Real Time Clearing program which was "designed to benefit customers" in November 2016.[2] (Dkt. 72 at 4). And it is undisputed that Plaintiff was a Speedway customer during the relevant time frame. Therefore, when Defendants implemented the Real Time Clearing program, they obligated themselves to act with reasonable care. *Union Park*, 670 So. 2d at 66-67; *McCain*, 593 So.2d at 503; *Schwartz*, 155 So. 3d at 473. Whether Defendants breached that duty is generally a question of fact for the jury. *Schwartz*, 155 So. 3d at 473. Here, the parties disagree about whether Defendants acted with reasonable care when the Real

---

[2] Notwithstanding the perceived "benefit" to customers, the Real Time Clearing program "allows merchants a higher level of assurance of fraud protection up to an amount that the merchant ... sets." (Beth Hunter Dep. 23:1-5, June 26, 2017, Dkt. 87-9).

5

Time Clearing program was implemented in 2016.[3]

Prior to the rollout, when a customer purchased gasoline at the pump, Speedway made a $1.00 preauthorization request to the customer's financial institution. (Melanie Claar Dep. 60:15-22, Dec. 18, 2017, Dkt. 87-3). Based on that request, the financial institution would hold up to $100.00 of the customer's available funds. (Claar Dep. 60:3-22, Dkt. 87-3). The financial institution would determine the amount held and length of time the funds are held, which could be several days. (Claar Dep. 60:24-61:4). By setting the preauthorization request at $125.00 and using the Real Time Clearing program, every transaction would result in a hold of $125.00, regardless of the financial institution's hold procedures. (Claar Dep. 62:4-25, Dkt. 87-3). And, if the Real Time Clearing program operated correctly, the funds would be held for approximately two hours rather than several days. (Hunter Dep. 109:12-14, Dkt. 87-9).

To implement the program at all of Speedway's stores, Worldpay and Speedway were required to update their "host systems." (Fengler Dep. 36:12-16, Dkt. 87-2). Specifically, Speedway had to update its preauthorization request from $1.00 to $125.00 and Worldpay had to update its system to flag Speedway transactions as Real Time Clearing transactions. (Hunter Dep. 91:3-22, Dkt. 87-9). The systems had to be updated simultaneously to stay in sync as transactions were processed. (Fengler Dep. 37:2-4, Dkt. 87-2). Accordingly, if the Real Time Clearing program operated as intended, when a customer purchased fuel at the pump, Speedway would submit the $125.00 preauthorization request and Worldpay would simultaneously flag the transaction as a Real Time

---

[3] Speedway considered rolling out the program in 2013 and conducted a customer transaction analysis. Based on that analysis, Speedway determined that a $125.00 preauthorization request would cover the majority of customer purchases. (Holly Fengler Dep. 54:16-20, July 11, 2017, Dkt. 87-2). Even though the price of gasoline had fallen from 2013 to 2016, Speedway did not conduct another customer transaction analysis before setting the $125.00 preauthorization amount for the 2016 rollout. (Fengler Dep. 56:9-16, Dkt. 87-2).

Clearing transaction to notify the financial institution to release the $125.00 hold placed on the customer's account within two hours. (Hunter Dep. 99:1-101:6, Dkt. 87-9).

Before rolling out the program to the approximately 2500 Speedway stores, testing was performed at 230 stores. When those stores were tested, Worldpay and Speedway updated their systems manually. (Fengler Dep. 38:14-16, Dkt. 87-2). To effectuate the change at the remaining stores, a script was written to "expedite the change." (Fengler Dep. 38:17-19, Dkt. 87-2).

According to Worldpay, the script could be applied in two ways: a slow process and a non-slow process. The slow process is performed in the background while payment transactions are processing. Worldpay updated its host system using the slow process. When transactions increased (when the stores became busier), Worldpay's update slowed down. (Fengler Dep. 42:22-43:5, Dkt. 87-2). Defendants acknowledge that Speedway's systems updated faster than Worldpay's, causing a lag between the two systems. (Fengler Dep. 42:2-44:25, Dkt. 87-2). This resulted in 56,048 transactions processed with a $125.00 preauthorization request that were not flagged as Real Time Clearing transactions. (Fengler Decl. ¶ 5, Dkt. 72-8).

According to Speedway, Worldpay ran its script first. (Hunter Dep. 93:23-17-24, Dkt. 87-9). Once Worldpay's system was updated, it notified Speedway "and said, it's done, good to go[.]" (Hunter Dep. 93:24-25, Dkt. 87-9). Speedway then ran its script to change the preauthorization request from $1.00 to $125.00. The systems, however, as noted, were not in sync. Worldpay's update was incomplete, transactions with a $125.00 preauthorization request were not flagged, and thousands of customers were affected. Speedway customers received text messages regarding the hold, funds were held for up to eight days, and thousands called "complaining of Speedway holding

7

$125 on their accounts."[4] (Fengler Email, Dec. 9, 2016, Dkt. 72-2).

It is undisputed that Speedway did not update its 2013 customer transaction analysis, customers were not provided notice of the change, and the $125.00 holds were not released within two hours of Teggerdine's transaction.[5] Based on these undisputed facts, a reasonable jury could find that Defendants did not act with reasonable care. However, the parties disagree about whether, among other things, Defendants acted reasonably in setting the preauthorization amount at $125.00 without conducting an updated customer transaction analysis, changing the preauthorization amount without notification to Speedway customers, and implementing the Real Time Clearing program without additional testing. Accordingly, disputed issues of material fact as to whether Defendants breached their duty to Plaintiff preclude summary judgment.[6] *Schwartz*, 155 So. 3d at 473. Defendants' motion for summary judgment as to Plaintiff's negligence claim will therefore be denied.

### C. Count II - Breach of Implied Contract - Speedway; Count III - Unjust Enrichment - Speedway and Worldpay

Defendants move for summary judgment on Plaintiff's claims for breach of implied contract and unjust enrichment.[7] Defendants contend that Plaintiff fails to submit evidence that she conferred a benefit on Defendants. Defendants are correct.

---

[4] Speedway received more than 3,200 calls on November 17 and 18. (Fengler Email, Dec. 9, 2016, Dkt. 72-2).

[5] Although the hold placed on Plaintiff's account may have been consistent with her customer agreement with Wells Fargo, it is undisputed that Speedway initiated the $125.00 preauthorization request, rather than its historical $1.00 request.

[6] Similarly, whether the 56,048 transactions, approximately 13.7% of the total, that were not properly flagged as a result of the disconnect between the Defendants' systems establish a breach of duty will be for the jury to determine. (Fengler Decl. ¶ 5, Dkt. 72-8).

[7] Plaintiff's breach of implied contract claim is solely against Speedway, while her unjust enrichment claim is against both Defendants.

8

The elements of a breach of implied contract and an unjust enrichment claim are similar. *Compare Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997), *as modified on clarification* (June 4, 1997), *with Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). The plaintiff must confer a benefit on the defendant, the defendant knew about and accepted or voluntarily accepted and retained the benefit, and the "circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it."[8] *Virgilo*, 680 F.3d at 1337; *Commerce P'ship*, 695 So.2d at 386. And, Florida law requires that a plaintiff confer a direct benefit. *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) (unjust enrichment claim); *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007) (quasi-contract claim). An indirect benefit will not sustain either cause of action. *Kopel*, 229 So. 3d at 818; *Am. Safety*, 959 So. 2d at 331.

Plaintiff contends that she conferred the "value of protection" on Defendants. However, She fails to submit any evidence that a "value of protection" was conferred on Worldpay, the payment processor. And, if a "value of protection" was conferred on Speedway, it was, at most, an indirect benefit.

As noted, Speedway initiated the preauthorization request on Plaintiff's Wells Fargo account when she used her debit card to purchase gasoline at the pump. Her Consumer Account Agreement with Wells Fargo provides:

> For all *card* purchase transactions, we may place a temporary hold on some or all of the funds in the account linked to your *card* when we obtain an authorization request. We refer to this temporary hold as an "authorization hold." The funds subject to the hold will be subtracted from your *available balance*.

---

[8] Florida courts have synonymously used the terms unjust enrichment, quasi contract, or contract implied in law to describe the same cause of action. *Commerce P'ship*, 695 So. 2d at 386 (citing cases).

> We can place an authorization hold for up to 3 *business days* . . . from the time of the authorization or until the transaction is paid from you account. . . . In some situations, the amount of the hold may differ from the actual transaction amount since the merchant may not know the total amount you will spend. For example, a restaurant submits the authorization request for your meal before you add a tip.

(Dkt. 72-1 at 55) (emphasis in original).

Wells Fargo initiated the authorization hold pursuant to Plaintiff's Consumer Account Agreement. (Dkt. 72-1 at 55). Wells Fargo, rather than Plaintiff, conferred the "value of protection" on Speedway when it held her funds. At most, therefore, Speedway indirectly received the benefit from Plaintiff under her agreement with Wells Fargo. Even viewing the evidence in the light most favorable to Plaintiff, she fails to demonstrate that she directly conferred a benefit on either Defendant. *Virgilio*, 680 F.3d at 1337; *Kopel*, 229 So. 3d at 818; *Am. Safety*, 959 So. 2d at 331. Therefore, Defendants' motion for summary judgment on her claims for breach of implied contract and unjust enrichment will accordingly be granted.

### D. Count IV - Florida Deceptive and Unfair Trade Practices Act - Speedway

Defendants move for summary judgment on Plaintiff's claim against Speedway for violations of the Florida Deceptive and Unfair Trade Practices Act on three grounds: 1) Plaintiff's financial institution imposed the hold on her account; 2) Plaintiff has not demonstrated actual damages; and 3) Plaintiff has not shown evidence of deceptive or unfair practices.

The elements required to establish a FDUTPA claim for damages are: "1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." *KC Leisure, Inc. v. Haber*, 972 So.2d 1069, 1073 (Fla. 5th DCA 2008). Actual damages are "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Smith v. 2001 S. Dixie*

10

*Highway, Inc.*, 872 So. 2d 992, 994 (Fla. 4th DCA 2004) (citation and internal quotation marks omitted). Actual damages "does not include 'actual consequential' damages", *id.*, "nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 873 (Fla. 2d DCA 2006).

Even though Plaintiff lost the use of her funds for approximately forty-eight hours, ultimately she regained access to the funds. Indeed, she fails to submit any evidence of the measure of actual damages during this forty-eight hour time frame.[9] *See e.g. Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1294 (M.D. Fla. 2009) (damages report submitted with actual damages calculation); *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 181 (Fla. 3d DCA 2010) (affirming summary judgment where plaintiff "failed to present any evidence relating to the proper measure of 'actual damages' in opposition"). Defendants' motion on Plaintiff's FDUTPA claim for damages will therefore be granted.

## IV. CONCLUSION

Defendants' Motion for Summary Judgment is **GRANTED** on Plaintiff's breach of implied contract claim (Count II), unjust enrichment claim (Count III), and Florida Deceptive and Unfair Trade Practices Act claim (Count IV). The motion is **DENIED** on Plaintiff's negligence claim (Count I). The motion on Plaintiff's request for injunctive relief is **DENIED as moot**.

**DONE AND ORDERED** this 10th day of April, 2018.

JAMES D. WHITTEMORE
United States District Judge

cc. Counsel of Record.

---

[9] It is unnecessary, therefore, to determine whether Speedway engaged in a deceptive and unfair practice.

11