UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KARA TEGGERDINE, individually and on
behalf of all others similarly situated,

  Plaintiff,

v.              Case No: 8:16-cv-03280-T-27TGW

SPEEDWAY, LLC and WORLDPAY US
INC.,

  Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Plaintiff's Motion for Class Certification (Dkt. 58), which Defendants oppose (Dkt. 65). Argument was heard on April 26, 2018. Upon consideration, Plaintiff's motion is DENIED.

**I. BACKGROUND**

This purported class action arises from the implementation of a payment processing program, the Real Time Clearing program ("RTC"), at Speedway's retail gasoline convenience stores on November 16 and 17, 2016, and the preauthorization requests and holds placed on customers' accounts who purchased gasoline at the pump.[1] Plaintiff's Amended Complaint included claims of negligence, breach of implied contract, unjust enrichment, and violations of the Florida Deceptive and Unfair Trade Practices Act. (Dkt. 48). Defendants' motion for summary judgment was granted

---

[1] Defendants removed the program from all but thirteen stores on November 17, 2016.

on all claims except Plaintiff's negligence claim, and the case is proceeding on that claim. (Dkt. 94).[2]

Plaintiff moves for class certification under Rule 23(b)(3) for this class:

> All persons residing in the United States who made a gasoline purchase with a Visa payment card at a Speedway station from November 16, 2016 through and including December 31, 2016, and had a $125 authorization hold placed on their personal financial account.

Alternatively, she seeks certification under Rule 23(c)(4) on certain issues.

## II. CLASS CERTIFICATION STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, —— U.S. ——, ——, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). Accordingly, the burden of establishing the propriety of class certification rests with Plaintiff, the advocate of the class, who must "affirmatively demonstrate [her] compliance with [Rule 23]." *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1231 (11th Cir. 2016), quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1232 (11th Cir. 2009); *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003); *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir.1975).

---

[2] In her negligence claim, Plaintiff alleges Defendants "had a duty to Plaintiff and the Class to use reasonable care in the processing of payment card transactions to ensure that only the advertised and agreed upon purchase price of a transaction would be withdrawn from their financial accounts;" that Defendants "breached their duties . . . by charging the $125 authorization hold to customer accounts, or alternatively, by not reversing the authorization hold within a timely manner;"that "Speedway had a duty to disclose to its customers . . . any policies that would cause an amount different from the purchase price of a transaction to be withdrawn or held from their financial accounts;" that "Speedway failed to use reasonable care in communicating the change in policy regarding the authorization hold;" and "[b]y charging an additional $125 to each purchase, Speedway breached its duty to sell gasoline at the advertised price." (Dkt. 48, ¶¶ 45, 46, 48, 49, 50). Further, Plaintiff alleges that "by establishing the authorization hold at $125, Speedway failed to use reasonable care to set a 'good faith estimate' of typical consumer transactions," and "failed to use reasonable care to ensure that only the purchase price of a transaction was withdrawn from the financial accounts of Plaintiff and the Class." (Id., ¶¶ 52, 53). Finally, Plaintiff alleges "Defendants failed to use reasonable care in communicating the information about the system change to Real Time Clearing, the problems associated with the implementation, and restricting customers' access to monies in their financial accounts." (Id., ¶ 56).

A class may be certified only if (1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims of the representatives are typical of the claims of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly. Fed. R. Civ. P. 23(a). These prerequisites to class certification are referred to as "numerosity, commonality, typicality, and adequacy of representation," and are "designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims." *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000).

In addition to the requirements of Rule 23(a), at least one of the three alternative subsections of Rule 23(b) must be satisfied. *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009). Plaintiff seeks certification under Rule 23(b)(3), which requires her to demonstrate (1) that questions of law or fact common to class members predominate over questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id.* Failure to establish any of the required elements of Rule 23(a) or Rule 23(b)(3) precludes class certification. *Valley Drug Co.*, 350 F.3d at 1188 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615–18, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

Evidentiary proof is required to satisfy the provisions of Rule 23. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). And, Plaintiff bears the burden of showing that the proposed class satisfies Rule 23 by a preponderance of the evidence. *See Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2009); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). Even when the parties have not contested an element of Rule 23, "a court nevertheless has

the responsibility of conducting its own inquiry as to whether the requirements of Rule 23 have been satisfied in a particular case." *Valley Drug*, 350 F.3d at 1188.

## III. DISCUSSION

At the outset of the hearing, Plaintiff limited the scope of her class to a liability only class, leaving the issues of causation and damages to be determined on an individualized basis by an alternative method such as a special master. And she announced that she would seek only nominal damages.

### A. Standing

The class certification analysis begins with the issue of standing. *Prado-Steiman*, 221 F.3d at 1280. "'[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Id.* at 1279 (citations omitted). Only after determining whether the named plaintiff has standing can it be determined whether the named plaintiff has representative capacity to assert the rights of others. *Id.* at 1280. "[A] plaintiff must allege and show that [s]he personally suffered injury." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). A plaintiff must demonstrate individual standing and "be part of the class and possess the same interest and suffer the same injury as the class members." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado-Steiman*, 221 F.3d at 1279).

Defendants contend that Plaintiff lacks standing as a putative class representative because she did not suffer a concrete injury, cannot represent class members injured outside Florida, and her injury from the $125 preauthorization request is distinct from a credit card user's injury, as well as those customers who had more than $125 in their bank account. Plaintiff counters that she suffered the same injury as others in the proposed class, the loss of use of her money.

Plaintiff describes her injury as the denial of use of her funds resulting from Defendants' implementation of RTC and the $125 preauthorization request made by Speedway, and the time and effort she spent attempting to resolve that. This description is sufficient to show a concrete injury to sustain Article III standing.[3] *See Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017) (finding a concrete injury where plaintiff "'lost time . . . attempting to resolve the credit inaccuracies'"). Plaintiff, part of the proposed class, possesses the same interest and same injury as the proposed class members. *Mills*, 511 F.3d at 1307. She therefore has standing to represent the class.

**B. Adequately Defined and Clearly Ascertainable**

The next step in the rigorous class certification analysis is determining whether the proposed class is "'adequately defined and clearly ascertainable.'" *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (citation omitted). The class members must be ascertained by objective criteria. *See Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x. 782, 787 (11th Cir. 2014). And, the process should be "administratively feasible," meaning "that identifying class members is a manageable process that does not require much, if any, individual inquiry." *Id.* at 787–88 (citation omitted).

The proposed class members, individuals residing in the United States who purchased gasoline at the pump during an identified time frame and who had a $125 authorization hold placed on their accounts, are ascertainable by administratively feasible and objective criteria. Defendants identified approximately 400,000 VISA transactions by customers who were not notified of the $125

---

[3] Speedway fails to provide authority to support its contention that a "two-day impediment to using a particular payment device," or in other words, the denial of use of personal funds, is not a concrete injury sufficient to sustain Article III standing. (Dkt. 64 at 8).

5

preauthorization request. Worldpay's corporate representative testified that a partial card number, the issuing bank, the transaction amount, and the transaction location can be retrieved from its records. (Fengler Dep. 55:19-57:7, Dkt. 58-8). Plaintiff's expert, Charles Marr, Esq. avers, based on his review of documents produced in discovery, that his firm is able to identify class members in a manageable process. (Marr Decl., Dkt. 58-2). And while Defendants contend that the class definition is "unworkable" because it includes individuals who "experienced no impact" from RTC, that contention goes to whether questions of individual damages predominate, not whether the class is adequately defined and clearly ascertainable. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Moreover, Defendants' contention is negated by Plaintiff having limited class certification to the issue of liability and seeking only nominal damages.

Alternatively, Defendants contend that class members are not clearly ascertainable because they do not "store or maintain full payment card numbers," (Claar Decl. ¶ 7, Dkt. 65-6), and in order to obtain the full card number, it must "reverse engineer" one card number at a time, (Fengler Decl. ¶ 7, Dkt. 65-7). Defendants, however, do not explain why a full payment card number is necessary to identify class members or why the time and expense associated with determining the full payment card number renders the class definition administratively unfeasible.[4] *See Bussey v. Macon County Greyhound Park, Inc.*, 562 F. App'x at 788 (reports generated provided sufficient data to identify class members). Indeed, Defendants have already identified the relevant transactions for the proposed class.[5] *Cf. Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015) (defendant's data

---

[4] Defendants do not adequately explain why Plaintiff's proposed process is unmanageable. Notably, Defendants do not contend that they cannot identify full card numbers, only that it will take time to do so.

[5] During the hearing, the distinction between a "preauthorization hold" and "preauthorization request" was raised. Plaintiff contended that there was no distinction between the two. Defendants countered that not all financial institutions placed $125 holds in response to the $125 preauthorization request. This distinction is without a difference

identified third-parties, not class members).

## C. Rule 23(a)

The preliminary factors for class certification having been satisfied, the inquiry turns to whether Plaintiff has met the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). While Defendants do not meaningfully oppose these requirements, the record shows that Plaintiff has satisfied them. *Valley Drug*, 350 F.3d at 1188.

### 1. Numerosity

The requirement of numerosity is met when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff submits evidence that over 400,000 transactions were processed on November 16 and 17. (Beth Hunter Dep. 36:9-21, Dkt. 58-1). And, approximately 56,000 were processed when RTC was not operating as intended. (Hunter Dep. 89:20-25, Dkt. 58-1). The numerosity requirement is therefore met. *Vega*, 564 F.3d at 1266–67.

### 2. Commonality

Commonality requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Because the only remaining claim is negligence, there must be common questions of law or fact among the class relating to this substantive claim. *Vega*, 564 F.3d at 1270. In attempting to meet the commonality requirement, Plaintiff focuses on Defendants' conduct in requesting the preauthorization hold, contending that the conduct is common to and effected all class members, and that the following issues are common to all class members and therefore susceptible to class wide proof:

---

for purposes of certifying a liability only class. Whether the financial institution placed a hold on an account goes to causation and damages, not liability.

> Whether Speedway was negligent in failing to inform its customers that it requires a pre-authorization request of $125 for every payment card transaction at a self-pay gasoline pump, which will result in a temporary hold on funds;
>
> Whether the pre-authorization request of $125 was reasonable in light of the average consumer transaction amounts at Speedway, in accordance with Visa policy;
>
> Whether Defendants were negligent in the testing, implementation, operation, and/or removal of the RTC Program at Speedway locations; [and]
>
> Whether Defendants failed to use reasonable care to ensure only the purchase price was withdrawn from the financial accounts of Plaintiff and the Class.

(Dkt. 58 at 8).

These issues are common to the Class on the theory of negligence. Plaintiff has therefore met her "relatively light" burden of establishing commonality under Rule 23. *Vega*, 564 F.3d at 1268.

### 3. Typicality

Likewise, Plaintiff's claim is typical of the class because "'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) (citation omitted). Plaintiff's claim arises out of the same course of conduct, the implementation of RTC, that is typical of the class claim. She therefore meets the typicality requirement.

### 4. Adequacy of Representation

Finally, Rule 23(a) requires that the Plaintiff fairly and adequately protect the interests of the class which "'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (citation omitted). No substantial conflicts have been identified. *See* (K. Teggerdine Declaration, Dkt. 58-5).

Plaintiff has dutifully prosecuted this action with qualified and competent counsel. *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001); (Yanchunis Decl., Dkt. 58-3); (Martin Decl., Dkt. 58-4); (Teggerdine Decl., Dkt. 58-5). Plaintiff meets the adequacy of representation requirement.

### D. Rule 23(b)(3)

In addition to satisfying Rule 23(a), Plaintiff must satisfy one of the alternative requirements in Rule 23(b). *Piazza*, 273 F.3d at 1346. In attempting to meet this burden, Plaintiff seeks certification under Rule 23(b)(3). Class certification is appropriate under Rule 23(b)(3) if Plaintiff demonstrates by a preponderance of the evidence that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). It is not required that all questions of fact or law be common, "only that some questions are common and that they predominate over individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004), *abrogated in part on other grounds, by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008); *see Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 537 (11th Cir. 2017).

Focusing on "Defendants' uniform course of conduct directed at Plaintiff and the Class," and relying on her premise that every purported class member was harmed in the same way by the preauthorization hold requests, Plaintiff contends that common questions of law and fact predominate. Defendants counter that individual issues predominate and that the proposed class action is unmanageable. Defendants' contentions are persuasive.

Instructive to a resolution of the parties' competing contentions is this passage:

> To assess the impact of a common question on the class members' claims, a district court obviously must examine not only the defendant's course of conduct towards the class members, but also the class members' legal rights and duties. *A plaintiff may claim that every putative class member was harmed by the defendant's conduct, but if fewer than all of the class members enjoyed the legal right that the defendant allegedly infringed, or if the defendant has non-frivolous defenses to liability that are unique to individual class members, any common questions may well be submerged by individual ones.* (emphasis added).

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010).

During the hearing, Plaintiff argued that by certifying the class for liability purposes only, common issues would predominate over individual issues. Pointing out that Plaintiff's negligence claim is a matter of state common law, Defendants countered that the law of negligence varies among the twenty-one states in which the transactions occurred and therefore individual issues regarding liability for negligence predominate.

The determination of whether common issues predominate over individual issues begins with the elements of the underlying claim. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011); *Brown*, 817 F.3d at 1234.[6] At first glance, the elements of a generic negligence claim would seem to be common, that being duty, breach, causation, and damages. But as noted by the 7th Circuit, the law of negligence among the states is not homogenous:[7]

---

[6] "The district court should then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial." (citation omitted). *Brown*, 817 F.3d at 1234. "Common questions are ones where 'the same evidence will suffice for each member,' and individual questions are ones where the evidence will 'var[y] from member to member.'" (citation omitted). *Id.* "After identifying the common and individual questions, the district court should determine whether the common questions predominate over the individual ones." *Id.* at 1234-35. As will be discussed, Plaintiff's evidence does not enable the court to conduct this rigorous analysis.

[7] Plaintiff fails to demonstrate that the law of negligence in each of the twenty-one states is common. *See* (Dkt. 58). Instead, she relies on the Defendants' common conduct citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) and *In re Tri-State Crematory Litigation*, 215 F.R.D. 660 (N.D. Ga. 2003). These cases are distinguishable. In *Mullen*, the claims were for Jones Act negligence, unseaworthiness, and maintenance and cure related to injuries sustained on a vessel. 186 F.3d at 623. In *Walley*, the court eliminated claims or potential remedies that would

> If one instruction on negligence [would] serve to instruct the jury on the legal standard of every state of the United States ... one wonders what the Supreme Court thought it was doing in the *Erie* case when it held that it was unconstitutional for federal courts in diversity cases to apply general common law rather than the common law of the state whose law would apply if the case were being tried in state rather than federal court.
>
> ...
>
> But nuance can be important, and its significance is suggested by a comparison of differing state pattern instructions on negligence and differing judicial formulations of the meaning of negligence and the subordinate concepts. The common law is not a brooding omnipresence in the sky, but the articulate voice of some sovereign or quasi sovereign that can be identified. The voices of the quasi-sovereigns that are the states of the United States sing negligence with a different pitch.

*Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d at 1300, 1301 (7th Cir. 1995), *superseded by Fed. R. Civ. P. 23(f) on other grounds*, (internal citations and quotation marks omitted). Indeed, variations in state law must be given their effect, no matter how minor or nuanced. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). And Plaintiff shoulders the burden of demonstrating the homogeneity of the different states' laws, or at least showing that any variations between the states is manageable. *Klay*, 382 F.3d at 1262.

While Plaintiff is correct that Defendants' implementation of RTC and the preauthorization hold requests is common to all purported class members, she is wrong to suggest that "[n]o individual inquiry will be required to establish any of Plaintiff's claims because the factual and legal issues surrounding Defendants' liability are common among Class members." (Dkt. 58 at p. 12). While the factual issue may be common, the liability issue under the various state laws of negligence has not been shown to be common among class members.

---

have required it to consider the laws of a large number of states so that "[v]ariations in state law ... d[id] not overwhelm the common issues ...." 215 F.R.D. at 696.

As noted, more than 400,000 VISA transactions on November 16 and 17 triggered preauthorization hold requests in twenty-one states. As Defendants correctly point out, Plaintiff fails to identify those twenty-one states, thereby preventing a meaningful analysis to determine if the law of negligence in those states is common, as she maintains. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) ("A district court's duty to determine whether the plaintiff has borne its burden on class certification requires that a court consider variations in state law when a class action involves multiple jurisdictions.").[8]

During argument, Defendants suggested several potential issues involving the law of negligence among the various states that could predominate over the common issue of their conduct, including varying sources of the standard of care, application of the economic loss rule in the various states which could bar recovery in the absence of physical injury or property damage, and distinctions between comparative or contributory fault among the states.[9] *See e.g. Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d at 1300–01 (citing cases comparing differing states nuanced interpretation of negligence). Affirmative defenses remain relevant to the question of predominance, and can defeat predominance where they apply to a majority of class members and raise individual questions. *See Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000) (affirmative defenses should be considered in making class certification decisions); *Sacred Heart*

---

[8] During the hearing, counsel referenced states east of the Mississippi River. That cursory reference, however, does not enable the Court to engage in the rigorous analysis required for class certification. And while Plaintiff cited two cases in support of her position, *Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644 (M.D. Fla. 2015) and *Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010), those cases are distinguishable. In *Roundtree*, the plaintiff sought certification of a class under the Fair Debt Collection Practice Act claim, not a nationwide class of state law claims. 304 F.R.D. at 651. In *Pella*, the court certified six statewide liability classes, not one nationwide class encompassing twenty-one states. 606 F.3d at 392-93.

[9] Neither party provided authority addressing either the similarities or differences in the law of negligence in the various states.

*Health System, Inc,* 601 F.3d at 1177-83.

These state law questions must be analyzed and answered to "identify the overall mix of individual versus common questions for purpose of predominance." *Brown,* 817 F.3d at 1238. That inquiry "requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case." *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 419 (5th Cir. 1998). Without an analysis of the law of negligence in the various states, Plaintiff fails to show that common issues of fact and law will "ha[ve] a direct impact on every class member's effort to establish liability[.]" *Klay,* 382 F.3d at 1255 (alteration in original).[10]

It follows that she also fails to demonstrate that a class action is a superior method for managing the litigation of the various state law negligence claims. Fed. R. Civ. P. 23(b)(3). The difficulty likely to be encountered in managing the proposed class based on various iterations of the law of negligence among tenty-one states is self evident. *See In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1018 (7th Cir. 2002) ("Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable."); *Allison,* 151 F.3d at 419 ("The predominance of individual-specific issues relating to the plaintiffs' claims for compensatory and punitive damages in turn detracts from the superiority of the class action device in resolving these claims."). Plaintiff's motion to certify the class under Rule 23(b)(3) will therefore be denied.

---

[10] Plaintiff acknowledges that negligence claims are not commonly certified under Rule 23. (Dkt. 58 at 12). And there is good reason for that, since variations in state negligence law may "swamp the common issues and defeat predominance." *Castano,* 84 F.3d at 741.

13

**E. Rule 23(c)(4)**

Alternatively, Plaintiff moves to certify particular issues under Rule 23(c)(4).[11] But that subsection assumes that the action as a whole satisfies the predominance requirement of Rule 23(b)(3). *Castano*, 84 F.3d at 745 n. 21 ("A district court cannot manufacture predominance through the nimble use of subdivision (c)(4). The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial.").[12]

Plaintiff has not satisfied the predominance requirement of Rule 23(b)(3) and therefore Rule 23(c)(4) is not available to her. Her alternative motion to certify particular issues under Rule 23(c)(4)

---

[11] Those issues are:

(1) Whether Speedway was negligent in failing to inform its customers that it requires a pre-authorization request of $125 for every payment card transaction at a self-pay gasoline pump, which will result in a temporary hold on funds;

(2) Whether the pre-authorization request of $125 was reasonable in light of the average consumer transaction amounts at Speedway, in accordance with Visa policy;

(3) Whether Defendants were negligent in the testing, implementation, operation, and/or removal of the RTC Program at Speedway locations; [and]

(4) Whether Defendants failed to use reasonable care to ensure only the purchase price was withdrawn from the financial accounts of Plaintiff and the Class.

[12] In support of her alternative request under Rule 23(c)(4), Plaintiff relies on *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996). In *Valentino*, the Ninth Circuit stated in *dicta* that where common questions do *not* predominate over individual questions, Rule 23 (c)(4) authorizes certification with respect to particular issues where those common issues can be isolated. 97 F.3d at 1234 (emphasis added). I find *Castano v. Am. Tobacco Co.* To be the better reasoned authority. Indeed, in support of its statement in dicta, *Valentino* cites *In re N. Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 856 (9th Cir. 1982). But *Dalkon Shield* did not pass over the requirement of predominance, as suggested in *Valentino*. Rather, *Dalton Shield* correctly recognized that under Rule 23(c)(4), a district court may, for purposes of efficiency, sever and try certain issues on a class basis, if Rule 23(b)(3), including predominance, has been satisfied.

will be denied.

**DONE AND ORDERED** this 31st day of May, 2018.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record